UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ESTHER M. CARABALLO-CECILIO,

    Plaintiff,

v.

MARINA PDR TALLYMAN, LLC,

    Defendant.

Civil No. 3:14-CV-01454 (JAF)

## **O R D E R**

This matter is before the court on Defendant Marina PDR Tallyman, LLC's oral motion for reconsideration of this court's denial of its motion for summary judgment. At the status conference held on January 21, 2016, Marina PDR Tallyman, LLC, requested that the court reconsider its ruling for the limited purpose of determining the issue of Marina PDR Tallyman, LLC's successor liability with respect to Marina Puerto del Rey. Upon hearing argument from both parties as to why we should determine this issue, the court granted Marina PDR Tallyman, LLC's request to reconsider – but only to determine whether Marina PDR Tallyman, LLC is a successor employer of Marina Puerto del Rey.

### **Facts**

On April 15, 2014, Plaintiff Esther Caraballo ("Plaintiff" or "Caraballo") brought suit against Defendant Marina PDR Tallyman, LLC ("Defendant" or "Marina") in the Court of First Instance in Fajardo, alleging that Marina committed employment discrimination and wrongful discharge in violation of Puerto Rico Law No. 80, of May 30, 1976, 29 L.P.R.A. § 185a, *et seq.* ("Law 80"); and Law No. 100, of June 30, 1959, 29 L.P.R.A. § 146, *et seq.* ("Law 100"), when it terminated her employment.

Marina removed the matter to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Marina alleges that it is not a citizen of Puerto Rico, but rather a Delaware limited liability company authorized to do business in Puerto Rico. Marina asserts that this court has complete diversity for purposes of removal jurisdiction under 28 U.S.C. § 1441(b) because its sole member is Putnam Bridge Funding III LLC ("Putnam"), a Delaware limited liability company with principal place of business in Greenwich, Connecticut.[1]

Caraballo began working for Marina Puerto del Rey on October 31, 2003. On December 28, 2012, Marina Puerto del Rey filed for bankruptcy under Chapter 11. *In re Puerto Del Rey, Inc. a/k/a/ Marina Puerto Del Rey*, Bankruptcy Petition No. 12-10295-ESL11, (D.P.R. Dec. 28, 2012) (ECF No. 1). On May 30, 2013, the bankruptcy court entered an Order Confirming Plan, authorizing the sale of Marina Puerto del Rey to Defendant Marina and additional non-parties to this litigation. *In re Puerto Del Rey, Inc. a/k/a/ Marina Puerto Del Rey*, Bankruptcy Petition No. 12-10295-ESL11, ECF No. 172; (ECF No. 56-1). Marina purchased the assets of Marina Puerto del Rey free of any liens or encumbrances under the authority of Bankruptcy Code section 363. (ECF No. 56-1 at 14). Specifically, the transfer of the assets was "effectuated free and clear of any liens, Claims, encumbrances, rights, remedies, restrictions, interests, liabilities, and contractual

---

[1] Recently, in another matter in which Marina was named as a defendant, we found the removal frivolous because "defendants lacked an objectively reasonable basis for seeking removal under either our diversity jurisdiction or our federal-question jurisdiction." *Cortés-Pacheco v. PBF-TEP Acquisitions Inc.*, No. 3:15-cv-01460 (D.P.R. Dec. 23, 2015), ECF No. 46 at 13. In *Cortés-Pacheco*, the plaintiff named no fewer than seven defendants which, as a group, defeated diversity jurisdiction. *See id.* Here, Marina is the only defendant, and Caraballo does not dispute that the matter was properly removed. We see nothing in the pleadings that precludes diversity jurisdiction in this matter.

Civil No. 3:14-CV-01454 (JAF) -3-

commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, other than as set forth in the Term Sheet…." (ECF No. 56-1 at 14).

On May 31, 2013, Caraballo executed an employment and confidentiality agreement which stated that her employment with Marina began on May 31, 2013, and that she was subject to a ninety-day probationary period. (ECF No. 46-2). Marina terminated Caraballo's employment contract before the expiration of the ninety-day probationary period.

Caraballo alleges that during her employment with Marina she was discriminated against because of her age and that her termination was unlawful. Caraballo argues that her claims against Marina do not include a successor liability claim. Instead, Caraballo argues that her claims against Marina are direct liability claims, but that we must consider the timeframe when she worked for Marina Puerto del Rey to calculate her damages according to 29 L.P.R.A. § 185f. Conversely, Marina also argues that it terminated Caraballo for "just cause" and that her damages, if any, are limited to the time period during which she worked for Marina – that is, from May 31, 2013, to August 19, 2013.

**Law and Analysis**

The question currently before the court is whether, in the event that Caraballo successfully proves her claims against Marina, her damages are limited to the time period during which she worked for Marina.

We note that Caraballo is not attempting to hold Marina liable for the previous wrongdoing of Marina Puerto del Rey. Instead, Caraballo argues that her damages for Marina's violations of Law 80 must be calculated considering the time she worked for Marina Puerto del Rey.

Under certain circumstances, Article 6 of Law 80 imposes liability on the purchaser of the assets of an ongoing business for termination of the seller's employees. *See* 29 LPRA § 185f, *and Arends v. Eurobank*, 845 F.Supp. 60 (D.P.R. 1994). 29 L.P.R.A. § 185f states:

> In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. In the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for the compensation provided herein, and the purchaser shall retain the corresponding amount from the selling price stipulated with respect to the business. In case he discharges them without good cause after the transfer, the new owner shall be liable for any benefit which may accrue under §§ 185a-185m of this title to the employee laid off, there being established also a lien on the business sold, to answer for the amount of the claim.

The hiccup here is that Marina's purchase of Marina Puerto del Rey, through bankruptcy proceedings, specifically stated that the employees of Marina Puerto del Rey were terminated and subject to being rehired by Marina.

Relying on *Rodríguez-Oquendo v. Petrie Retail Inc. D.I.P. y/o Centro Retail Corporation H/N/C/ Marianne, Urban Brands, Inc.*, 167 D.P.R. 509 (2006), Caraballo argues that the purchase of Marina Puerto del Rey through bankruptcy proceedings "free and clear" of all liens does not preclude her suit. There, the Puerto Rico Supreme Court

held that "the sale of assets under a federal bankruptcy proceeding, though free of liens, will not bar the application of the successor employer doctrine as developed by our caselaw precedents." *Rodríguez-Oquendo*, 167 D.P.R. 509 (ECF No. 56-2 at 8).  Under the successor employer doctrine, "an employer who replaces another through a transfer of assets or a corporate merger will assume the obligations contracted by the previous employer." *Id.* (ECF No. 56-2 at 3) (citations omitted).

Marina is correct that the facts of *Rodríguez-Oquendo* are distinguishable from the case at bar. In *Rodríguez-Oquendo*, the plaintiff employee sued the successor employer for harm that occurred prior to the transfer of assets.  Additionally, there was no mention of how the employees went from working for the predecessor to the purchaser, and the sale order did not expressly provide language that the purchaser was not a successor employer.  Here, the harm allegedly occurred after the transfer of assets and has no connection to the former employer.  Caraballo's claim is premised upon an obligation remaining attached to the prior asset.

The Order Confirming Plan clearly considered and addressed the employees as assets of Marina Puerto del Rey. (ECF No. 56-1). Marina paid the determined value for Marina Puerto del Rey deeming all employees of Marina Puerto del Rey as terminated as of the date of the sale. Paragraph 16 of the Order Confirming Plan states:

> None of the Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) is a mere continuation of the Debtor or its estate, or is holding itself out to the public as a continuation of the Debtor. There is no continuity or common identity between the Debtor and any of Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable),

> and there is no continuity of enterprise between the Debtor and any of Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable). None of the Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) is a successor to the Debtor or its estate, and none of the transactions contemplated by the Term Sheet or any of the other Definitive Documentation, including, without limitation, the Affiliate Transfer, the Sale, and the assumption and assignment of the Assumed Contracts, amount to a consolidation, merger, or de facto merger of the Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) with or into the Debtor. For the avoidance of doubt, any and all employees of the Debtor or any affiliates of the Debtor (including, without limitation, any and all employees who supply direct or indirect services to the Debtor by way of their employment with any affiliate of the Debtor), and any and all related obligations, wages, payments, and benefits associated with any and all such employees, shall not be and hereby are not assumed in any respect whatsoever by the Purchaser, nor do any such obligations, wages, payments, or benefits constitute any future obligation of the Purchaser. Any and all employees hired by the Purchaser in connection with the operation of the Purchased Assets shall be and hereby are deemed to be new hires of the Purchaser, and no such employee shall have any right to claim from or against the Purchaser or any person or entity associated therewith any obligations, wages, payments, in any way related to the period prior to the Closing.

(ECF No. 56-1 at 36-37). The plain language of the Order Confirming Sale undoubtedly defeats Caraballo's claim that her time in service with Marina Puerto del Rey continued on to Marina. Marina's valuation of Marina Puerto del Rey's assets clearly considered the wages, benefits, and obligations of Marina Puerto del Rey's employees and *specifically* terminated those benefits. Had Marina believed that the time in service remained for each of Marina Puerto del Rey's employees, it would have changed the value Marina was willing to pay.

Further, unlike in *Rodríguez-Oquendo*, Caraballo was aware of the bankruptcy proceedings and the terms of 363 sales are public. Had Caraballo felt wronged by the explicit language of the terms of the sale, she could have objected as an interested party to the terms of the sale that she believed infringed upon a vested right.[2] To find that the employees of Marina Puerto del Rey retained their time in service despite the sale order's express language to the contrary would undermine the very purpose of 363 sales and would render several provisions of the bankruptcy order meaningless. We, therefore, decline to adopt such an argument.

Caraballo's signed employment contract cures any remaining concerns as to whether the time in grade of Marina Puerto del Rey's employees remained with them after its sale to Marina. After a thorough interview process of all interested former employees of Marina Puerto del Rey, Marina extended employment offers to selected individuals, including Caraballo. Caraballo accepted the terms of the employment offer and signed an employment contract acknowledging that she was a new employee of Marina as of May 31, 2013. (ECF No. 46-2 at 1). The employment contract "constitutes the only contract and understanding existing between [Marina] and [Caraballo] regarding employment, confidentiality, noncompetition, and any other matter covered by this agreement." (ECF No. 46-2 at 5).

We do not believe that our decision conflicts with Puerto Rico's Supreme Court case law in *Rodríguz-Oquendo* because of the drastic differences between the facts of the

---

[2] To the extent that Caraballo believes her prior employer violated her rights by its agreement in the bankruptcy sale, she would effectively be raising a claim of successor liability. As she has expressly disavowed such a claim, this court need not review it.

two cases. The undisputed evidence before this court is that Caraballo bargained for employment with Marina without any reference to her prior employment -- a position entirely consistent with the language of the Order Confirming Sale. Having reached that bargain, Caraballo may not now seek more than her contract provides. As a result, any damages she may demonstrate are limited to the time she worked for Marina.[3]

## **Conclusion**

For the aforementioned reasons, the court finds that the damages for any successful claim for wrongful termination under Law 80 will be limited to the time Caraballo was employed by Marina, in other words, from May 31, 2013, to August 19, 2013.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 29th day of January, 2016.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE

---

[3] The court has not addressed the claim that Caraballo was fired for good cause, but it would note that the plain language of 29 L.P.R.A. § 185f would preclude a liability finding in the case of a termination for good cause.