IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ESTHER M. CARABALLO-CECILIO,

  Plaintiff,

     V.                                 CIVIL NO. 14-1454 (PAD)

MARINA PDR TALLYMAN LLC,

  Defendant.

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff sued her former employer complaining of wrongful discharge under the Puerto Rico Unjust Discharge Act, Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 § 185a et. seq.; and of age discrimination pursuant to Puerto Rico's general antidiscrimination statute, Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 § 146 et. seq. Before the court is plaintiff's "Motion for Reconsideration" (Docket No. 88), which defendant opposed (Docket No. 97).

The motion requires examination of the extent to which the seniority "carry forward" provision of Law No. 80 survives the sale of a company's assets free and clear of liens, claims or encumbrances as part of a bankruptcy reorganization proceeding. Careful evaluation of the issue in light of the record, leads the court to conclude that the "carry forward" provision is not binding upon the purchaser of such assets. In consequence, the motion for reconsideration is DENIED. Only the time plaintiff was employed with the purchaser may be taken into account to calculate defendant's monetary exposure under Law No. 80.

## I.     BACKGROUND

From 2003 until 2013, plaintiff was an employee of Marina Puerto del Rey (Docket No. 56, Section IV, ¶ B.1, 2; Docket No. 77 at p. 2). In December 2012, Marina Puerto del Rey filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (Docket No. 77 at p. 2). As part of that proceeding, it sold to defendant some of Puerto del Rey's assets. Id. On May 30, 2013, the bankruptcy court confirmed the assets sale free and clear of liens, claims and encumbrances under the authority of Section 363 of the Bankruptcy Code. Id. On May 31, 2013, plaintiff signed an employment agreement, becoming an employee of defendant on that date (Docket No. 46-2). On August 19, 2013, defendant terminated plaintiff's employment (Docket No. 1-1 at ¶ 5; Docket No. 56 at ¶ 3).

In April 2014, plaintiff initiated the action in the Fajardo Part of the Court of First Instance of Puerto Rico (Docket No. 1 at ¶ 1). In June 2014, defendant removed the case to this court, and in November 2015 moved for summary judgment (Docket Nos. 1 and 40, respectively). On December 1, 2015, the court denied defendant's motion for summary judgment (Docket No. 49). During a status conference on January 21, 2016, defendant orally moved for reconsideration (Docket No. 77). Upon hearing argument from both parties, the court decided to evaluate whether defendant was a "successor employer." Id.

In due course, the court found defendant had purchased in bankruptcy court the business from which plaintiff was dismissed, and concluded that "damages for any successful claim for wrongful termination under Law 80 will be limited to the time [plaintiff] was employed by [defendant]…" without taking into account her employment with the previous business owner. Id. at p. 8. Plaintiff claims the court erred and should reconsider the ruling (Docket No. 88). In support, she essentially alleges that (1) the court refused to be briefed on the subject, relying instead

on the official docket of the bankruptcy proceeding confirming the "First Amended Joint Chapter 11 Plan Proposed by the Debtor, Firstbank of Puerto Rico, and PBF-TEP Acquisition, Inc.;" and (2) the ruling is contrary to Law No. 80. Id. at p. 2.

## II.   DISCUSSION

Law No. 80 requires the employer to pay a statutory indemnity to employees hired for undefined term who are dismissed from their employment without just cause. P.R. Laws Ann. tit. 29 § 185(a). The indemnity consists of: (1) two months' pay plus one week's pay for each completed year of service in case of employees with up to five (5) years of service; (2) three months' pay plus two weeks of pay for each completed year of service in case of employees with more than five but less than fifteen years of service; and (3) six months' pay plus three weeks' pay for each completed year of service in case of employees with fifteen or more years of service. Id.

In general, employment relationships terminate when the employer's assets are sold.[1] But under Article 6 of Law No. 80, if the assets are transferred as an ongoing business and the purchaser retains or hires all or a majority of the sellers employees, the employee's years of service with the seller are carried forward to the new employment relation with the purchaser for purposes of calculating the statutory indemnity in the event of a subsequent dismissal without just cause. P.R. Laws Ann. tit. 29 § 185(f).[2]

---

[1] See, Rodríguez v Executive Airlines, ---F.3d----, 2016 WL 4640362, *3 n.5 (D.P.R. March 31, 2016)(so recognizing). When the transaction is structured as a sale of stock or other property interest in the owner/employer, there is no change in the employment relationship. The employer and employee remain the same. Id. For a comprehensive discussion of business transfers in the context of Article 6 of Law No. 80, see J.L. Capó-Matos, in M.J. Caterine (ed.), *Employment at Will: A State-by-State Survey*-Puerto Rico Chapter (2011) & 2014 Supplement, pp. 40-27-40-36.

[2] On this account, if employee A has three years of service for company B, that seniority is carried over when B's assets are sold as an ongoing business to purchaser C, such that if A is discharged by C without just cause two years later, A's indemnity would be calculated as if A had been employed five years with C.

Initially, plaintiff was employed by Marina Puerto del Rey, which for purposes of this Opinion, the court assumes sold and transferred the company's assets to defendant as an ongoing business.[3]  Following the acquisition, defendant hired plaintiff, dismissing her less than three months later.  Because she had been employed approximately nine years with Marina Puerto del Rey, she claims her years of service for that company were carried forward to her new job with defendant and should be considered in calculating the statutory indemnity she would be entitled to if she were to prevail under Law No. 80 (Docket No. 88 at p. 9).  Defendant argues it purchased the business free and clear of any liens, claims or encumbrances under the authority of Section 363(f) of the Bankruptcy Code (Docket No. 77 at pp. 2-3).  As such, it contends Law 80 liability is limited to the close-to-three-month period that plaintiff worked for it.  Id.

In the original ruling, the court agreed with defendant, concluding that potential liability under Law No. 80 would be determined without taking into account plaintiff's employment with the previous business owner (Docket No. 77 at p. 8).  Plaintiff, however, states the ruling is contrary to Law No. 80, for defendant is a "successor employer" which acquired Marina Puerto del Rey in a transfer of an ongoing business (Docket No. 88 at pp. 7, 8).[4]  And thus, to evaluate

---

[3] If defendant had not purchased the assets as an ongoing business, it would not be subject to Article 6 of Law No. 80.  See, Espinosa-Cabrera v. Mass Services Corporation, 95 DTA 304, 1190, 1192 (P.R. Court of Appeals, September 30, 1995)(concluding that Article 6 did not apply in a situation where assets were sold but not acquired and operated as an ongoing business).

[4] In general, successorship describes a situation where one entity has succeeded another in the ownership of a business.  See, Rodríguez, 2016 WL 4640362 at *5 (so noting).  In the employment context, a successor may be found liable for the predecessor's obligations under certain circumstances.  Id.  Various factors determine whether an assets purchaser may be so considered.  Id. (listing factors).  When such is the case, the successor is known as a "successor employer." See, Rodríguez-Oquendo v. Petrie Retail Inc., 167 D.P.R. 509, 524 (2006)(so referring to respondent in applying traditional successorship principles to find successor liable for predecessor's obligations).  That said, Law No. 80 does not define the term "ongoing business transfer."  The "Guidelines for the Interpretation and Application of Law No. 80 of May 30, 1976, as Amended" (June 30, 2014), enacted by the Puerto Rico Department of Labor and Human Resources, mention factors associated with the successor employer concept while discussing when a transfer of an ongoing business occurs.  Id. at p. 66.  The Legislature's failure to incorporate the "successor employer" concept into Law No. 80 may suggest that to assess whether a "transfer of an ongoing business" under Article 6 has taken place triggering obligations beyond those accrued with the seller, factors transcending those defining a "successor employer" need to be examined.  Those factors include whether the transaction entailed the purchase or transfer of essential components of a "business," such as the brand or commercial name; contracts (leases, insurance, supplies, etc.); lines of credit; account receivables; patents and trademarks; furniture and equipment; inventory; client lists; and other elements relevant to the specific type of entity or operation in question.  Together, these elements form an economic unit, "the business," which can be transferred

the parties' contentions it is necessary to look into the effect of a bankruptcy-related acquisition of assets upon the Law No. 80 "carried forward" provision.

Section 363(f) of the Bankruptcy Code provides the trustee may sell property under subsection (b) or (c) of this section "free and clear" of any interest in such property of an entity other than the estate, only if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. See, 11 U.S.C. § 363(f)(listing factors); In re PBBPC, Inc., 484 B.R. 860 (1st Cir. BAP 2013)(same).

Plaintiff does not contest that at least one of the statutory conditions for approval of a sale free and clear of an interest in property is satisfied. But she alleges that the bankruptcy acquisition is in the main inconsequential because in Rodríguez-Oquendo, 167 D.P.R. at 509, the Puerto Rico Supreme Court addressed the effect of a bankruptcy discharge on Law No. 80, upholding liability notwithstanding a prior release in bankruptcy (Docket No. 88 at pp. 7-9).

In Rodríguez-Oquendo, plaintiff sued Petrie Retail, her former employer, in the Court of First Instance of Puerto Rico ("CFI") alleging to have been dismissed without just cause and because of her age. The CFI found Petrie liable, ordered it to pay the statutory indemnity under Law No. 80 and an additional amount on account of age discrimination, and ordered the attachment of two bank accounts to satisfy the judgment. 167 D.P.R. at 511-512. After judgment had become

---

as an ongoing concern. The two tiers of analysis are not mutually exclusive and may supplement each other to produce a more complete and accurate picture of what constitutes an ongoing business transfer in this setting. See, Alvarado-Rivera v. Oriental Bank and Trust, 914 F.Supp.2d 198, 204 (D.P.R. 2012)(focusing on whether the new company acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations); Espinosa-Cabrera, 95 DTA 304, at 1192 (evaluating if an ongoing business transfer occurred by reference to factors relevant to a "successor employer" determination, and to elements of the business involved in the transaction).

final and unreviewable, Urban Brands entered an appearance, asking the CFI to stay execution of the judgment on grounds it was the owner of the attached accounts, which it had purchased as part of Petrie Retail's assets in bankruptcy court free of liens. Id. at 512-513.

The CFI denied the request, the Court of Appeals of Puerto Rico reversed, and the Puerto Rico Supreme Court reversed the Court of Appeals. Id. at 513-514. The Supreme Court concluded that Urban Brands was a successor employer, and that a sale of assets free of liens in bankruptcy court does not preclude the applicability of the successor employer doctrine to impose liability on the asserts purchaser. Id. at 514-524. In support of its understanding of bankruptcy law, the Puerto Rico Supreme Court relied in part on the authority of Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994).[5]

In that case, Cary Metal Products had filed a Chapter 11 bankruptcy proceeding in 1985, and as debtor in possession negotiated the sale of its assets to Zerand-Bernal Group Inc. Id. at 161-162. The sale agreement recited that it was subject to the entry by the bankruptcy court of an order approving the sale "free and clear of any liens, claims or encumbrances of any sort or nature," confirming all of the terms and conditions of the Agreement. Id. at 161. In December 1985, the bankruptcy court entered an order approving the sale. Id. Several months later, Cary jointly with a creditors' committee that included Rockwell Graphic Systems, Inc. filed a plan of reorganization, which the bankruptcy court approved in January 1987. Id.

Four and a half years later, Ronald Cox and his wife filed a diversity products liability suit against Cary, Zerand, Rockwell Graphic and others in federal district court, alleging that in 1989 (before the bankruptcy sale), Mr. Cox had caught his hand in a machine that had been

---

[5] See, Rodríguez, 167 D.P.R. at 521-522.

manufactured by Cary and sold by it to Cox's employer, and that under the law of the state governing successor liability, Zerand was liable for any defect in the Cary machine. Zerand filed an adversary complaint in bankruptcy court seeking to reopen the Cary bankruptcy and asking that the Coxes be enjoined from proceeding against Zerand, and that Rockwell Graphics be enjoined from filing a cross-claim against Zerand seeking indemnification should Rockwell be held liable to the Coxes for its role in the accident. The bankruptcy court held that it lacked jurisdiction over the adversary proceeding instituted by Zerand, and the district court and the Seventh Circuit affirmed. Id. at 161.

The Seventh Circuit pointed out the case required it to consider the power of the bankruptcy court to enjoin proceedings in other courts after the completion of the bankruptcy proceedings. Id. at 160. It noted that the products liability suit was not a proceeding related to the Cary bankruptcy within the meaning of Section 1334 of the Bankruptcy Code, and the relation of the disputes to bankruptcy was too tenuous to empower the bankruptcy court to adjudicate a tort suit to which the former bankruptcy debtor was not even a party, years after the bankruptcy "was wound up." Id. at 161-163.

The Puerto Rico Supreme Court read the Zerand-Bernal's decision as a rejection of restrictions on limits to successor liability arising out of assets sales in bankruptcy proceedings. See, Rodríguez, 167 D.P.R. at 523 (so noting). As a result, it permitted liability to be imposed on the assets purchaser for a harm (*e.g*. plaintiff's discharge) occurring two months *prior* to the transfer of assets. Id. at 513, 522-524. By contrast, the discharge here occurred *after* the transfer of assets. And contrary to Rodríguez, which is silent on how the bankruptcy court adjudicated the status of employees, in the instant case the Order Confirming Plan expressly addresses the topic

of debtor's employees (Docket No. 77 at p. 5)(referencing bankruptcy court's order). In particular, it states that:

> None of the Purchaser, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) is a successor to the Debtor or its estate. … For the avoidance of doubt, any and all employees of the Debtor or any affiliates of the Debtor (including without limitation, any and all employees who supply direct or indirect services to the Debtor by way of their employment with any affiliate of the Debtor) and any and all related obligations, wages, payments, and benefits associated with any and all such employees, shall not be and hereby are not assumed in any respect whatsoever by the Purchaser, nor do any such obligations, wages, payments, or benefits constitute any future obligation of the Purchaser. Any and all employees hired by the Purchaser in connection with the operation of the Purchased Assets shall be and hereby are deemed to be new hires of the Purchaser, and no such employees shall have any right to claim from or against the Purchaser or any person or entity associated therewith any obligations, wages, payments, in any way related to the period prior to the Closing.

Id. at pp. 5-6.

The Order was issued on May 30, 2013. Id. at p. 2. And on May 31, 2013, plaintiff signed an employment contract, acknowledging that she was a new employee as of that date. Id. at p. 7.[6] Plaintiff alleges that she was not part of the bankruptcy proceeding and never received formal notice of the proceedings as a possible creditor or party in interest of the proceedings (Docket No. 88 at pp. 9-10). On that basis, she contends that the fact she did not object to confirmation of the Order Confirming Plan cannot be construed against her. Id. Nevertheless, the record suggests that plaintiff knew as early as December 2012 that Villa Marina had filed for bankruptcy, and that in

---

[6] See, plaintiff's employment agreement with defendant at Docket No. 46-2. Plaintiff characterizes the contract as a *pro forma* action defendant "imposed" on all of the previous owners' employees (Docket No. 88 at p. 9). Notwithstanding the characterization, she does not deny having signed the contract and does not seek to invalidate the agreement as deceitful, or as one resulting from mistake, intimidation or violence within the scope of the Puerto Rico Civil Code. See, Article 1277 of the Civil Code, P.R. Laws. Ann. tit. 31 § 3404 (providing that contractual consent "given by error, under violence, by intimidation, or deceit shall be void").

January 2013, the debtor informed the employees of the bankruptcy petition (Docket No. 46-1 at p. 19).[7]

Plaintiff contends her failure to appear in bankruptcy court is of no consequence because her rights under Law No. 80 cannot be waived (Docket No. 88 at p. 10). Whatever the scope of the Law No. 80 waiver clause, it does not trump the Bankruptcy Code. As stated above, the bankruptcy court authorized the sale of Villa Marina's assets free and clear of liens, encumbrances and claims. And so it freed those assets from the effects of the Law No. 80 carried forward seniority provision, which pursuant to Law No. 80, creates a lien on the sold assets. See, P.R. Laws Ann. tit. 29 § 185(f)(creating lien). Hence, this case is no different than In re PBBPC, Inc., 484 B.R. at 860.

In In re PBBPC, Inc., the First Circuit BAP affirmed a decision of the bankruptcy court for the District of Massachusetts approving a sale of assets free and clear of all interests in the assets, defining the term "interest" to include the experience rate assessed by the Commonwealth of Massachusetts against the debtor under the state unemployment compensation law.[8] As a result, the purchaser of the debtor's assets was not required to pay the higher rate assessed by the Commonwealth, based on the debtor's experience rating. Id. at 865. For the BAP, a contrary

---

[7] Plaintiff alleges that in its original ruling, the court made findings of fact without considering her evidence (Docket No. 88 at pp. 3, 11). But her motion for reconsideration does not challenge any of those findings. Nor does it contain a proffer of alternate findings. At any rate, the findings in the present Opinion reflect judicial notice of the bankruptcy court's rulings pursuant to Rule 201 of the Federal Rules of Evidence, plaintiff's reconsideration motion, the section on the parties' uncontroverted statements included in the' Joint Pretrial Conference Report (Docket No. 56), and factual statements plaintiff herself presented therein.

[8] For purposes of the analysis, the bankruptcy court assumed that OPK was a successor employer within the meaning of the applicable statute, holding that the right the state sought to enforce was an interest in the property because the buyer purchased assets of the bankruptcy estate, and by operation of the state statute the debtor's experience rating travelled with the assets and encumbered their purchaser. See, In re PBBPC, Inc., 484 B.R. at 864-865 (so noting). Therefore, it concluded that the relationship between the state's right to tax according to the debtor's experience rating and the asset transfer on which the right was predicated made that right an interest within the meaning of Section 363(f). Id.

result would have allowed recovery "of the money that the predecessor employer would have paid if it had continued in the business." Id. at 869.

With this understanding, the situation evaluated in In re PBBPC, Inc. is similar to the one posed in the case *sub judice* under Law No. 80. In the end, as with the unemployment tax experience, where rating is used to determine prospective tax rates, the Law No. 80 provision is used to calculate prospective indemnity predicated on an item –seniority– accrued with the debtor and, correspondingly, attached to the assets transferred during the bankruptcy proceeding.

### III.     CONCLUSION

It is apparent there are relevant differences between the facts here and those in Rodríguez-Oquendo, particularly in light of the First Circuit's BAP decision in In re PBBPC, Inc. For that reason, experience and seniority accrued with the debtor may not be assessed against the successor following a sale of assets free and clear of liens, claims and encumbrances as provided for in the bankruptcy court's sales confirmation order, to calculate liability based on a harm (the employment termination) occurring after the assets have been transferred. In consequence, such seniority may not be taken into account to calculate defendant's liability under Law No. 80. With that in mind, plaintiff's motion for reconsideration is DENIED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2016.

                 s/Pedro A. Delgado-Hernández
                 PEDRO A. DELGADO-HERNÁNDEZ
                 United States District Judge